**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| WREN THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-14-3292 |
| | § | |
| CHEVRON USA INC., *et al.* | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

What is the proper court for a case brought by a ship captain who lives in Texas, seeking damages from two American companies, for a kidnapping off the Nigerian coast? The plaintiff, a ship captain who worked in Nigeria, sues under the Jones Act and for maintenance and cure and unseaworthiness.  He wants to proceed in Texas state court, where he sued Edison Chouest Offshore (also referred to as "ECO," "Offshore Services Vessels," or "OSV")[1] and Chevron USA, claiming that he was employed by both when pirates operating off the Nigerian coast attacked and boarded the *M/V C-Retriever* and held him for several days before releasing him.  The defendants prefer federal court and removed the case based on both federal question and diversity jurisdiction.

A number of motions are pending.  Thomas seeks remand, arguing that his Jones Act claims are not removable and that OSV is an in-state defendant. (Docket Entry No. 14).  OSV responds that although it was Thomas's employer, it is not a proper party because it is a Louisiana corporation and

---

[1] Thomas sued Edison Chouest Offshore but did not serve this defendant before Chevron removed. Offshore Service Vessels received service of the removed case and moved to dismiss for lack of personal jurisdiction.  OSV stated that it was called Edison Chouest Offshore until June 2006, when it changed its name to Offshore Service Vessels.  OSV also stated that ECO is no longer a business entity, but that the group of companies OSV is part of sometimes uses "Edison Chouest Offshore" as a trade name.  (Docket Entry No. 12, Ex. A).

not subject to personal jurisdiction in Texas, so its presence in the suit cannot bar removal. Chevron responds that because it did not employ Thomas, it cannot be sued under the Jones Act, so the claims under that statute do not preclude removal to federal court.

The first issue is which issue to decide first. Thomas asks the court to decide the remand issue first and return the case to state court because the allegations in the petition—asserting Jones Act claims against joint employers and suing a Texas defendant—make the case nonremovable. The defendants ask the court to consider the motions challenging the bars to removal first. The proper order, according to the defendants, is to rule first on OSV's motion to dismiss for lack of personal jurisdiction and then on the motion to remand, considering Chevron's arguments that Jones Act claims are improperly pleaded against it because it was not Thomas's employer.

The court agrees that it makes sense to decide first whether OSV is properly sued in either a Texas state court or this federal court. If OSV is not subject to personal jurisdiction and must be dismissed from this suit, the claims against it do not prevent removal. If OSV is dismissed, the next issue is whether the claims against Chevron are subject to federal removal jurisdiction. This requires the court to decide whether Thomas can assert Jones Act claims against Chevron and, if not, whether removal was proper based on either federal question or diversity jurisdiction. If the claims against Chevron are properly in federal court, the final issue is whether they should be dismissed, as Chevron asks.

After a hearing on January 23, 2015, (Docket Entry No. 28), the court allowed the parties to conduct additional discovery on OSV's citizenship, personal jurisdiction over OSV, and Thomas's employment status. The parties did this discovery and supplemented the record. The court held another hearing on June 2, 2015, at which the lawyers presented oral argument. The court

then converted Chevron's motion to dismiss into a motion for summary judgment, and Thomas and Chevron filed supplemental memoranda. No party submitted additional evidence. (Docket Entry Nos. 46, 47, 48).

Based on the pleadings; the motions, responses, and replies; the arguments; and the applicable law, the court grants OSV's motion to dismiss, (Docket Entry No. 12), denies Thomas's motion to remand, (Docket Entry No. 14), and grants Chevron's motion for summary judgment, (Docket Entry No. 1). A dismissal order is separately entered.

The reasons for these rulings are set out below.

## I.    Background

Wren Thomas was the captain of the *C-Retriever*, a supply vessel supporting Chevron's platform operations in the Agbami Field off the Nigerian coast. (Docket Entry No. 1, Ex. 2, Original Petition at ¶ 12). Thomas alleges that he told Chevron and ECO that he feared pirate attacks and that the defendants knew of earlier attacks. (*Id.* at ¶¶ 10, 12). Thomas worried that the vessel's age, its lack of speed, and the use of easily-accessed VHF radios to communicate vessel locations rather than more secure satellite phones, made the *C-Retriever* particularly vulnerable. (*Id.* at ¶ 11).

Thomas alleges that in the spring of 2013, he began receiving threats over the *C-Retriever*'s VHF radio and cell phone. (*Id.* at ¶ 13). Thomas reported these threats to a Chevron area manager and to his ECO supervisors. (*Id.*). Thomas alleges that the defendants also received an anonymous tip about threats to his vessel's security. (*Id.* at ¶ 14). Thomas asked to be transferred to a different region, but his ECO supervisors did not move him. (*Id.* at ¶ 15).

In October 2013, a militant group in Bayelsa, Nigeria threatened to kidnap ECO crewmembers. (*Id.* at ¶ 16). ECO sent a warning to its vessels in the region, including the *C-*

*Retriever*, encouraging the crews to "stay very vigilant." (*Id.*). Four days after ECO sent this warning, Thomas was assigned to make a supply run from Onne, Nigeria to the Mere and Pennington oil fields. Thomas alleges that the route he was ordered to take went through "one of the most pirate-infested areas in West Africa, and directly closer to the source of the recent threats." (*Id.* at ¶ 17). Thomas objected, but obeyed. (*Id.* at ¶ 18).

The *C-Retriever* began the trip on October 22, 2013. Following usual practice, the defendants broadcast the vessel's position through VHF radios. (*Id.* at ¶ 19). Pirates attacked the *C-Retriever* the night of October 23, 2013. Because the vessel did not have a fortified safe room, Thomas and other crew members hid in the bulk tank room. (*Id.* at ¶ 20). The pirates breached the room after six hours and began shooting. (*Id.*). Thomas and his engineer surrendered. (*Id.*). The pirates held Thomas for 18 days. (*Id.* at ¶ 21). Thomas alleges that he was tortured and poorly fed. (*Id.*). When Thomas was released, he was malnourished and suffered from posttraumatic stress disorder, sleep disorders, and other medical problems. (*Id.* at ¶ 24).

Thomas sued Chevron and OSV in Texas state court in October 2014, asserting claims under the Jones Act, and for unseaworthiness and maintenance and cure against both defendants.

Chevron timely removed, and OSV consented. OSV argued that it was not subject to personal jurisdiction and should be dismissed from this suit. Chevron argued that the Jones Act claims against it were improper, and that the court should dismiss OSV for lack of personal jurisdiction, then find that Chevron and Thomas were diverse and that the nonremovable Jones Act claims against Chevron were improperly joined, allowing federal removal jurisdiction.

The motions to be decided are Thomas's motion to remand for lack of subject-matter jurisdiction, OSV's motion to dismiss for lack of personal jurisdiction, and Chevron's motion to

dismiss for failure to state a claim.  The record includes: the state-court petition; affidavits from Brian Engeron and Wren Thomas; a declaration from Grace Nerona; OSV's vessel logs; discovery requests and responses; answers OSV and ECO filed to lawsuits filed against them in state court; an ECO company newsletter; screenshots from ECO's website; and reports from Thomas's attempts to serve ECO at OSV's offices in Cut Off, Louisiana.

## II.     The Issue to Decide First

A district court should generally address challenges to its subject-matter jurisdiction and challenges to personal jurisdiction before addressing the merits, *see Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 93–102 (1998), but there is no mandatory sequence of jurisdictional challenges, *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)).  "In cases removed from state court to federal court, as in cases originating in federal court, there is no unyielding jurisdictional hierarchy" requiring a court to decide challenges to its subject-matter jurisdiction before deciding personal jurisdiction.  *Ruhrgas AG*, 526 U.S. at 578; *see also Villar v. Crowley Mar. Corp.*, 990 F.2d 1489, 1494 (5th Cir. 1993), abrogated by *Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211 (5th Cir. 1998), rev'd by *Ruhrgas AG*, 526 U.S. at 574 ("district courts have the power to rule on motions challenging personal jurisdiction before reaching motions to remand").

Thomas argues that the court should first decide whether it has subject-matter jurisdiction, looking solely to the allegations in its state-court petition.  Because Thomas alleged that OSV is a Texas citizen and asserted nonremovable Jones Act claims against both OSV and Chevron, Thomas argues that there is no federal removal subject-matter jurisdiction over this suit.  OSV and Chevron both ask the court first to decide that OSV is not a Texas citizen and is not subject to general

personal jurisdiction in Texas—Thomas does not argue specific personal jurisdiction—then to decide the motion to remand based on analyzing whether OSV was improperly joined.

"Where . . . a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction." *Id.* at 588. "A federal court may consider personal jurisdiction issues prior to addressing a motion to remand where 'federal intrusion into state courts' authority is minimized.'" *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000) (quoting *Ruhrgas AG*, 26 U.S. at 587). Deciding whether OSV is subject to personal jurisdiction does not require the court to decide difficult state-law questions because the Texas long-arm statute extends to the constitutionally permissible limits of due process. *See id.* (affirming the magistrate judge's decision to consider personal jurisdiction first based on concerns of "judicial economy" when neither the personal jurisdiction nor the subject-matter jurisdiction issue presented "particularly thorny questions" of state law) (citing *Ruhrgas AG*, 119 S. Ct. at 1571); *see also* TEX. CIV. PRAC. & REM. CODE § 17.042; *Wilson v. Belin*, 20 F.3d 664, 647 & n.1 (5th Cir. 1994).

Deciding if there is general personal jurisdiction over OSV is much simpler than deciding all the issues the parties raise about subject-matter jurisdiction. For example, the parties dispute whether, absent diversity jurisdiction, there is federal-question jurisdiction over Thomas's maritime claims. Subject-matter jurisdiction over maritime claims is the subject of considerable debate. *Compare Exxon Mobil Corp. v. Starr Indem. & Liab. Co.*, No. Civ. A. H-14-1147, 2014 WL 2739309 (S.D. Tex. June 17, 2014); *Genusa v. Asbestos Corp.*, 18 F. Supp. 3d 773, 790 (M.D. La. 2014) ("the current version of 28 U.S.C. § 1441 allows removal of general maritime claims without

requiring an additional source of federal jurisdiction"); *Carrigan v. M/V AMC AMBASSADOR*, No. Civ. A. H-13-03208, 2014 WL 358353 (S.D. Tex. Jan. 31, 2014); *Wells v. Abe's Boat Rentals Inc.*, No. Civ. A. H-13-1112, 2013 WL 3110322, at *3 (S.D. Tex. June 18, 2013) ("the fact that the action includes Jones Act claims against Abe's Rentals does not make the entire case nonremovable"), *with Rutherford v. Breathwite Marine Contractors, Ltd.*, 59 F. Supp. 3d 809, 812–13 (S.D. Tex. 2014); *Figueroa v. Marine Inspection Servs.*, 28 F. Supp. 3d 677 (S.D. Tex. 2014); *Alexander v. Seago Consulting, LLC*, No. 4:14-CV-1292, 2014 WL 2960419 (S.D. Tex. June 23, 2014); *Butler v. RLB Contracting, Inc.*, No. 3:14-CV-112, 2014 WL 1653078 (S.D. Tex. Apr. 24, 2014); *Perio v. Titan Mar., LLC*, No. Civ. A. H-13-1754, 2013 WL 5563711 (S.D. Tex. Oct. 8, 2013) (all holding that there is no federal-question removal subject-matter jurisdiction over maritime claims).

The court's subject-matter jurisdiction depends in part on whether a Texas court has personal jurisdiction over OSV. The parties dispute whether OSV is a Texas or a Louisiana citizen. If, as OSV contends, it is a Louisiana citizen and cannot be subjected to suit in Texas, then it was improperly joined and must be dismissed. Because deciding whether OSV is headquartered in Houston or in Louisiana resolves both the personal-jurisdiction inquiry and part (but not all) of the subject-matter jurisdiction inquiry, OSV's motion to dismiss is addressed first. The court then turns to the remand motion, which depends on OSV's citizenship and on the claims against Chevron. The court finally examines Chevron's motion to dismiss for failure to state a claim, which involves the merits.

## III.    Personal Jurisdiction Over OSV

Under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident." *Johnston v. Multidata Sys. Int'l*

*Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).  "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'"  *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson*, 20 F.3d at 648).  "Proof by a preponderance of the evidence is not required."  *Johnston*, 523 F.3d at 609 (quoting *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)).  A court must consider, but is not limited to, the allegations in the pleadings.  In deciding whether personal jurisdiction exists, "the district court may receive 'any combination of the recognized methods of discovery,' including affidavits, interrogatories, and depositions to assist it in the jurisdictional analysis."  *Little v. SKF Sverige AB*, No. H-13-cv-1760, 2014 WL 710941, at *3 (S.D. Tex. Feb. 24, 2014) (quoting *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008)).  At the motion stage, "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor."  *Id.*  The court is not obligated to credit conclusory allegations, even if uncontroverted.  *Panda Brandywine Corp. v. Potomac Elec. Power*, 253 F.3d 865, 868 (5th Cir. 2001).

"A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment."  *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009).  The Texas long-arm statute extends to the limits of due process.  *Id*.  To satisfy due process, the plaintiff must demonstrate "(1) that the non-resident purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and

substantial justice.'"  *Johnston*, 523 F.3d at 609 (citation omitted).

"A defendant establishes minimum contacts with a state if 'the defendant's conduct and connection with the forum state are such that [he] should reasonably anticipate being haled into court there.'"  *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 379 (5th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).  "There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction."  *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).

Because the acts giving rise to this suit all occurred in or near Nigeria, Thomas does not argue specific jurisdiction.  The issue is general personal jurisdiction over OSV.  A court has general jurisdiction over a nonresident defendant "to hear any and all claims" against him when his contacts with the state are so "'continuous and systematic' as to render [him] essentially at home in the forum."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2851 (2011)).  "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'"  *Johnston*, 523 F.3d at 609 (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)).  "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction."  *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002).  "[C]ontinuous corporate operations within a state [must be] so substantial and of such a nature as to justify suit . . . on causes of action arising from dealings entirely distinct from those activities." , 134 S. Ct. at 761 (emphasis omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a

corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 131 S. Ct. at 2853–54.

OSV is incorporated in Louisiana and has its headquarters in Cut Off, Louisiana.  (Docket Entry No. 12, Ex. A, Engeron Affidavit).  OSV has filed an affidavit from Brian Engeron, its staff counsel, stating that it has its principal place of business in Cut Off, Louisiana, is not registered to do business in Texas, does not own property in Texas, and that its contacts with Texas are limited and sporadic.  (*Id.*).  In response, Thomas submits OSV vessel logs.  He argues that OSV vessels regularly call at the Port of Houston and that this establishes general personal jurisdiction over OSV in this State.  (Docket Entry No. 31, Ex. 4).

The record shows that OSV has 39 vessels in its fleet.  Three of these vessels have called at a Texas port over the past two years.  Although these three vessels have called at the Port of Houston 43 times in the past two years, each call has been at the direction of a time charterer, not OSV. (Docket Entry No. 12, Ex. A, Engeron Affidavit).  Courts have found similar evidence insufficient to establish general personal jurisdiction.  *See De Leon v. Shih Wei Navigation Co.*, 269 F. App'x 487 (5th Cir. 2008) (unpublished) (affirming the district court's holding that there was no general jurisdiction over the defendant based on the fact that the defendant's vessels had, at the direction of time charterers, called at Texas ports).  Personal jurisdiction must arise out of minimum contacts "that the 'defendant himself' creates with the forum State."  *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  "[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).

10

Thomas argues that OSV is the same entity as Edison Chouest Offshore, or ECO, which is headquartered in Houston and maintains an office here.  (Docket Entry No. 30 at p. 2, Ex. 1).  Thomas cites a screenshot from a website for ECO listing a Houston office, and a 2011 ECO company newsletter referring to a "corporate office" in Houston.  (Docket Entry No. 30, Ex. 2).

The record shows that the company that is now OSV was Edison Chouest Offshore, or ECO, until June 2006.  After that date, OSV and other affiliated companies used ECO as a trade name, but it is apparently not a separate legal entity capable of being sued.  (Docket Entry No. 12, Ex. A, Engeron Affidavit).  The ECO Houston office is leased by Galliano Marine Services, LLC, a separate ECO-affiliated company, which maintains the office.  The office houses limited administrative staff serving the ECO companies, including OSV.  (Docket Entry No. 39, pp. 15–16).  Recent cases have held that when a local affiliate has this type of presence and activity in the forum state, that does not subject the out-of-state parent or subsidiary company to jurisdiction in that state.

In *Daimler*, 134 S. Ct. at 746, the Supreme Court held that the defendant, Daimler, was not subject to general personal jurisdiction in California, either based on its own contacts or those of its wholly owned affiliate, MBUSA, which served as its exclusive distributor and importer in the United States.  *Id.* at 760.  Neither Daimler, which was organized under the laws of Germany and headquartered there, or MBUSA, a Delaware company with its principal place of business in New Jersey, was incorporated in California or had its principal place of business there.  *Id.* at 752.  MBUSA did have three regional offices in California.  California sales accounted for 10 percent of MBUSA's sales in the United States and 2.4 percent of Daimler's sales worldwide.  *Id.*  The Court assumed that MBUSA was subject to general personal jurisdiction in California and that it was

proper to impute MBUSA's California contacts to Daimler.  *Id.* at 761.  That was, however, insufficient to establish general personal jurisdiction over Daimler in California.  The Court held that these contacts did not show that Daimler, rather than MBUSA, was "at home" in the forum state, the test for deciding whether courts in that state had general personal jurisdiction over the foreign defendant.  *Id.* at 762.  The Court acknowledged earlier cases holding that "a corporation's continuous operations in-state may suffice to establish general jurisdiction," but warned that those cases "should not attract heavy reliance today."  *Id.* at 761 n.18 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952); *Barrow S.S. Co. v. Kane*, 170 U.S. 100 (1898); *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259 (1917)).

Relying on *Daimler*, the Second Circuit has held that a foreign defendant's affiliate with a regional office in the forum state does not subject the foreign defendant to general personal jurisdiction in that state because imputing the affiliate's contacts to the defendant does not make it "at home" in that state.  *See Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014) (the foreign defendant had transacted business with New York companies, two of the company's affiliates used an office in New York, and one affiliate's website emphasized its close ties to the United States); *Gucci Am., Inc. v. Weixing LI*, 768 F.3d 122, 135 (2d Cir. 2014) (a defendant that was incorporated and had its principal place of business abroad had four branch offices in the United States but conducted only a small part of its worldwide business in the New York branch office; most of its business was conducted through over 10,000 branches in 26 other countries).  These cases involved far more extensive activities by the affiliate on the foreign defendant's behalf than the limited administrative support ECO provided OSV.  Imputing to OSV the contacts of the Houston ECO office, which provided administrative support for OSV and other

ECO companies, does not establish general jurisdiction over OSV in Texas.

Thomas also argues that ECO and OSV have previously litigated in Texas without objecting to jurisdiction.  (Docket Entry No. 31).  The record shows that when ECO was previously sued in Texas, it answered with a general denial and asserted an affirmative defense  that it "does not exist as a legal entity" and was "not a proper party to this litigation."  (Docket Entry No. 30, Ex. 4).  OSV answered a suit against it with a general denial.  (*Id.*).  A defendant's voluntary submission to personal jurisdiction in other cases in this state does not prevent that defendant from objecting to personal jurisdiction in unrelated suits.  *See Cooper v. McDermott Int'l, Inc.*, 62 F.3d 395 (5th Cir. 1995) (unpublished); *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 n.4 (5th Cir. 1990).

OSV is not incorporated in Texas, does not maintain a principal place of business in the State, and is not registered to do business here.  The only contacts Thomas has identified are: the ECO regional office with its seven administrative employees; the presence of three OSV vessels in Texas ports at the direction of third-party charterers; and the fact that OSV and ECO have been sued before in Texas.  These contacts do not show the sort of "continuous and systematic" activity that in an "exceptional case" can establish general jurisdiction outside of a company's place of incorporation or principal place of business.  *Daimler*, 134 S. Ct. at 761 n.19.

OSV is not at home in Texas, and this court lacks general personal jurisdiction over OSV.  OSV is dismissed.

## IV.      Thomas's Motion to Remand

### A.      The Applicable Standard: Improper Joinder

A defendant has the right to remove a case to federal court when federal subject-matter jurisdiction exists and the removal procedure is properly followed.  *See* 28 U.S.C. § 1441.  The

removing party must show by a preponderance of the evidence that federal jurisdiction exists and that removal is proper. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995)). Removal statutes are construed strictly in favor of remand. *Manguno*, 276 F.3d at 723. A district court must remand a case to state court if there is no federal removal subject-matter jurisdiction. *See* 28 U.S.C. § 1447(c); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182–83 (5th Cir. 2005).

Federal subject-matter jurisdiction is determined as of the removal date. *See In re Bissonet Invs. LLC*, 320 F.3d 520, 525 (5th Cir. 2003) (citing *Arnold v. Garlock*, 278 F.3d 426, 434 (5th Cir. 2002)); *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995). A court may determine subject-matter jurisdiction based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565–66 (5th Cir. 2010) (quoting *St. Tammany Parish ex rel. Davis v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009)). "When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1194–95 (2010).

Federal courts have original jurisdiction over any civil action in which "the matter in controversy exceeds . . . $75,000 . . . and is between citizens of different States." 28 U.S.C. § 1332(a)(1). There is complete diversity between Thomas, a Texas citizen, and Chevron, which is incorporated in Pennsylvania and has its principal place of business in California. Thomas argues that as a Texas citizen, OSV's presence defeats diversity and its in-state defendant status defeats proper removal. *See* § 1441(b)(2) ("[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) . . . may not be removed if any of the parties in interest properly

14

joined and served as defendants is a citizen of the State in which such action is brought."). To decide federal removal jurisdiction based on a defendant's citizenship, a court is not limited to the allegations in the pleadings, but may also consider testimony, affidavits, and other extrinsic evidence. *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100 (5th Cir. 1990).

Thomas also argues that his Jones Act claims against both OSV and Chevron defeat removal. Jones Act claims are generally not removable. 46 U.S.C. § 30104; 28 U.S.C. § 1445(a); *Lackey v. Atlantic Richfield Co.*, 990 F.2d 202 (1993). "[W]hile federal courts ordinarily look only to the plaintiffs' pleadings in determining whether a Jones Act claim has been stated, defendants may pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal." *Lackey*, 990 F.2d at 207; *see also Burchett v. Cargill, Inc.*, 48 F.3d 173, 176 (5th Cir. 1995). If Jones Act claims are properly pleaded against any defendant, this court must remand.

To show that a defendant or claim has been improperly joined to defeat removal jurisdiction, the removing party must show that there is no reasonable possibility that the plaintiff could recover on its claims against that party in the state court. *Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc), *cert. denied*, 544 U.S. 992 (2005). A court first conducts "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim." *Id.* "If the plaintiff can survive a Rule 12(b)(6) challenge, there [generally] is no improper joinder." *Id.* The petition on file in the state court when the case was removed controls the inquiry. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995); *Akerblom v. Ezra Holdings Ltd.*, 509 F. App'x 340, 345 (5th Cir. 2013) (per curiam). If the pleading reveals a reasonable basis of recovery on one cause of action, the court generally must remand the entire suit to state court. *See Rubin v. Daimlerchrysler Corp.*, No. Civ. A. H:04-

4021, 2005 WL 1214605, at *2 (S.D. Tex. May 20, 2005).

However, the court is not limited to the pleadings.  A further summary inquiry may be appropriate to "identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery."  *Smallwood*, 385 F.3d at 573–74; *see, e.g.*, *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 311 (5th Cir. 2005) (upholding the district court's piercing of the pleadings when the parties had spent 10 months on postremoval discovery).  A summary inquiry is appropriate here because the parties have conducted discovery into which company was Thomas's Jones Act employer and whether OSV is an in-state defendant, and have presented affidavits and exhibits in support of their respective positions.

If the court finds that a party or a claim is improperly joined, that party or claim is disregarded in determining federal subject-matter jurisdiction and the claim is dismissed under Federal Rule of Civil Procedure 21.  *See Parr v. Deutsche Bank Nat'l Trust Co.*, No. SA13-cv-930 (XR), 2014 WL 358409, at *2 (W.D. Tex. Jan 30. 2014) (citing *Akerblom*, 509 F. App'x at 347).

In evaluating whether the state-court pleading states a claim, the federal court applies the state-court pleading standard, not the federal standard under Rule 12(b)(6).  *See Michels v. Safeco Ins. Co. of Indiana*, 544 F. App'x 535, 538 (5th Cir. 2013) (unpublished); *Akerblom*, 509 F. App'x at 344; *De La Hoya v. Coldwell Banker Mex., Inc.*, 125 F. App'x. 533, 537–38 (5th Cir. 2005) (unpublished) (all applying the Texas pleading standard); *Edwea, Inc. v. Allstate Ins. Co.*, No. H-10-2970, 2010 WL 5099607, at *6 (S.D. Tex. Dec. 8, 2010).

### B.    Whether OSV's Presence Prevents Removal

Thomas argues that there is no federal removal jurisdiction because OSV is an in-state defendant and because he asserted nonremovable Jones Act claims against OSV.  As discussed above, OSV is incorporated and has its principal place of business in Louisiana. *See Hertz*, 130 S.

Ct. at 1192 (defining a corporation's "principal place of business" as the place where "a corporation's officers direct, control, and coordinate the corporation's activities."). Considering and imputing the Houston ECO office's Texas contacts to OSV does not establish general personal jurisdiction over OSV. Because OSV is not subject to personal jurisdiction in Texas and has not waived its objections to jurisdiction, there is no reasonable possibility that Thomas could recover against OSV on any claim in a Texas state court.[2]  *See Cooper*, 62 F.3d at 395.

*Cooper* involved facts similar to the present case. Cooper was a Texas citizen who was kidnapped and detained by Islamic extremists while on a business trip to Iran. He sued McDermott International ("International"), a Panamanian corporation headquartered in Louisiana, and McDermott Incorporated ("McDermott"), a Delaware corporation. *Id.* at *1. He also sued two Texas companies. The defendants removed to federal court on the basis of diversity jurisdiction, claiming that the Texas companies were improperly joined because Cooper could assert no claim against them and that International was improperly joined because it was not subject to personal jurisdiction in Texas. *Id.* International moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2), and McDermott filed a Rule 12(b)(6) motion to dismiss for failure to state a claim, which the district court converted to a summary judgment motion. *Id.* The district court considered International's motion to dismiss for lack of personal jurisdiction before Cooper's motion to remand.

---

[2]  Some cases have held that the absence of personal jurisdiction over a defendant does not support a finding of improper joinder because objections to personal jurisdiction can be waived. *See Zufelt v. Isuzu Motors Am., L.C.C.*, 727 F. Supp. 2d 1117, 1131 (D.N.M. 2009);*Seguros Comercial Am., S.A. de C.V. v. Am. President Lines, Ltd.*, 934 F. Supp. 243, 245 (S.D. Tex. 1996). In those cases, the party claimed to be improperly joined based on the absence of personal jurisdiction had not claimed improper joinder, moved to dismiss under Rule 12(b)(2), or otherwise objected to personal jurisdiction. This case is distinguishable because OSV has objected to personal jurisdiction, filed a Rule 12(b)(2) motion to dismiss, and claimed that it is improperly joined. In these circumstances, the Fifth Circuit has held that a finding based on Rule 12(b)(2) that there is no personal jurisdiction over a defendant can show that there is no reasonable basis to predict recovery against that defendant, meeting the defendants' burden to show improper joinder. *See Cooper*, 62 F.3d at 395.

The court dismissed International because it was not subject to general personal jurisdiction in Texas.

The Fifth Circuit held that the district court did not err in considering the motion to dismiss first or in allocating the burden of proof on that motion.  Reviewing the district court's ruling *de novo*, the Fifth Circuit found that Cooper failed to make a *prima facie* showing that International was subject to personal jurisdiction in Texas, and that, as a result, there was no possibility that Cooper could recover against International in state court.  *Id.* at *2.  The Fifth Circuit affirmed the district court's dismissal of International, as well as its conclusion that International was improperly joined. *Id.*

*Cooper* is consistent with the conclusion that Thomas has not made a *prima facie* showing that OSV is subject to personal jurisdiction in Texas.  Because OSV has not waived its objections to personal jurisdiction, there is no reasonable basis to predict that Thomas could recover against OSV in state court on any of his claims.  OSV is improperly joined, and the claims against it are not considered in determining federal removal jurisdiction.

### C.    Whether the Jones Act Claims Against Chevron Are Improperly Joined

Chevron argues that there is no reasonable possibility that Thomas will recover on his Jones Act claims against Chevron because OSV, not Chevron, was Thomas's employer.  Thomas alleged that both Chevron and ECO were his employer and asserted Jones Act claims against each.

A plaintiff may assert Jones Act claims only against his or her employer.  *See* 42 U.S.C. § 30104; *Guidry v. S. Louisiana Contractors, Inc.*, 614 F.2d 447, 451 (5th Cir. 1980).  A plaintiff may have only one Jones Act employer.  *See Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 791 (1949) (there is "no doubt that under the Jones Act only one person, firm, or corporation can be sued as employer").  To determine a seaman's Jones Act employer, "[o]ne must look at the

18

venture as a whole. Whose orders controlled the master and the crew? Whose money paid their wages? Who hired the crew? Whose initiative and judgment chose the route and the ports?" *Cosmopolitan Shipping Co.*, 337 U.S. at 795.

Thomas alleged in his state-court petition that ECO "managed . . . operated, crewed, and/or controlled the vessel *C-Retriever*," that ECO was in charge of transferring him, and that ECO circulated the warning about a threatened pirate attack to all vessels in the region, including the *C-Retriever*.  (Original Petition at ¶¶ 6, 15, 16).  Thomas also alleged that he had a "Chevron area manager,"  and that both Chevron and ECO ordered him to run the route that led through an area known to be targeted by pirates.  (*Id.* at ¶¶ 13, 17).

OSV stipulated that it was Thomas's Jones Act employer throughout his service on the *C-Retriever*.  OSV submitted an affidavit from Brian Engeron, Staff Counsel for OSV.  The affidavit states that OSV paid Thomas's wages; owned, operated, and managed Thomas's vessel; and had the right to promote, demote, or fire Thomas.  (Docket Entry No. 17, Ex. A, Engeron Affidavit).  The affidavit shows that OSV had exclusive responsibility for, and control over, Thomas's employment, and that Chevron had no control over either the vessel or Thomas.  (*Id.*).

Thomas argues that he might have been Chevron's borrowed seaman.  Courts consider nine factors to determine whether a plaintiff is a company's borrowed seaman:

> (1)  Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
> (2)  Whose work is being performed?
> (3)  Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
> (4)  Did the employee acquiesce in the new work situation?
> (5)  Did the original employer terminate his relationship with the employee?
> (6)  Who furnished tools and place for performance?
> (7)  Was the new employment over a considerable length of time?
> (8)  Who had the right to discharge the employee?

19

(9) Who had the obligation to pay the employee?

*Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1244 (5th Cir. 1988); *Ausama v. Tetra Applied*

*Techs., LP*, Civ. A. No. 05-2513, 2006 WL 2548171, at *1 (E.D. La. Aug. 31, 2006).

OSV has stipulated that it remained Thomas's employer and did not lend him to any other

entity.  The record shows that OSV retained control over Thomas's employment.  Thomas has not

alleged or offered evidence showing that Chevron controlled his employment or that OSV agreed

to lend Thomas to Chevron.  Even assuming that, as Thomas alleges, he had a Chevron area manager

and that Chevron and ECO both participated in having the *C-Retriever* take the ill-fated supply run,

the record does not support an inference that Chevron borrowed Thomas from OSV.  Instead, the

record shows a "mere suggestion of details or cooperation" between Chevron and OSV.  *Melancon*,

834 F.2d at 1244.  There is no basis to find that Thomas could assert a Jones Act claim against

Chevron as its borrowed seaman.

Thomas argues that he pleaded in the alternative that it was unclear who his employer was

and that it could have been ECO or Chevron.   He argues that the current record shows that his

employer status remains confused because "ECO denies that Captain Thomas was its employee,

claiming instead that Captain Thomas was employed by" OSV.  (Docket Entry No. 29 at p. 1).  The

record reveals no confusion.  ECO is not a legal entity and therefore, it cannot be Thomas's Jones

Act employer.  ECO is the name OSV formerly used and a trade name OSV and other companies

sometimes still use.  The record shows that OSV controlled Thomas's employment and was his

Jones Act employer.

Because Chevron was not Thomas's employer, there is no reasonable basis to predict that

Thomas will recover against Chevron on his Jones Act claims.  The Jones Act claims against

Chevron are improperly joined and their presence in the state-court petition does not preclude

20

federal removal jurisdiction.  *See Holmes v. Atl. Sounding Co., Inc.*, 437 F.3d 441, 445 (5th Cir. 2006) (holding that a fraudulently pleaded Jones Act claim does not bar removal).

>        **D.      The Motion to Remand**

The claims against OSV are dismissed for lack of personal jurisdiction.  FED. R. CIV. P. 12(b)(2).  Because the record reveals no reasonable basis to predict that Thomas could recover against Chevron on his Jones Act claims, these claims are improperly joined and are dismissed under Rule 21.  *See Parr*, 2014 WL 358409, at *2 (citing *Akerblom*, 509 F. App'x at 347); *Scarlott v. Ocwen Loan Servicing, LLC*, No. 13-cv-2742, 2014 WL 109409, at *5 (S.D. Tex. Jan. 10, 2014).

Thomas's claims against Chevron for unseaworthiness and maintenance and cure damages remain.  There is federal subject-matter jurisdiction over the remaining claims against Chevron based on complete diversity, and there is no bar to removal of these claims.  Remand is inappropriate.

Thomas has repeatedly asked the court, as an alternative to denying his motion to remand, to allow him to dismiss his claims against Chevron, without prejudice.  Thomas's requests have been asserted in the alternative, "[i]f the Court is not persuaded that both Defendants may potentially be Jones Act employers, and the Court finds that Jones Act employer status must be isolated to a single defendant at the pleading stage." (Docket Entry No. 14 at pp. 7–8).

"The purpose of Thomas' alternative request for nonsuit was to ensure that the Court remanded ECO if the Court perceived a seaman's allegations against two Jones Act employer[s] as problematic." (Docket Entry No. 42 at p. 1).  The problem with the request is that the claims against OSV were dismissed because OSV is not subject to personal jurisdiction in Texas.  There is no claim against either ECO or OSV to remand if Chevron is dismissed from the suit.  The alternative motion

to dismiss is denied as moot.[3]

## V.    Chevron's Motion to Dismiss the Remaining Claims

### A.    The Applicable Legal Standard

The court converted Chevron's Rule 12(b)(6) motion to dismiss into a motion for summary judgment. *See Tremont LLC v. Halliburton Energy Servs., Inc.*, 696 F. Supp. 2d 741, 852–53 (S.D. Tex. 2010). The Rule 56 standard applies.

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, LLC v. Haydel Enterprises, Inc.*, — F.3d —, 2015 WL 1600689, at *2 (5th Cir. Apr. 8, 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* at *2 (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* (quotations omitted); *see also Celotex*, 477 U.S. at 325. Although the party moving for summary

---

[3] Even if the court considered Thomas's request for voluntary dismissal before addressing Chevron's improper joinder arguments, the result would not be to remand the claims against OSV because it is not subject to personal jurisdiction in Texas.

judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets its initial burden], the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 2015 WL 1600689, at *2 (quoting *EEOC*, 773 F.3d at 694). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 2015 WL 1600689, at *2. Nevertheless, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2).

### B.    Analysis

Chevron moves to dismiss Thomas's remaining claims for unseaworthiness and for maintenance and cure.  A shipowner has a duty to provide a seaworthy vessel.  The unseaworthiness claim is "traditionally only available against the shipowner and the vessel."  *Stokes v. B.T. Oilfield Servs., Inc.*, 617 F.2d 956, 957 (5th Cir. 1980).  Thomas alleged that ECO owned the *C-Retriever*, and OSV submitted uncontroverted evidence showing that it owned the vessel.  (Original Petition at ¶ 6; Docket Entry No. 17, Ex. A, Engeron Affidavit).  Thomas has not submitted or pointed to any evidence that Chevron owned the *C-Retriever*.  The unseaworthiness claims against Chevron are dismissed because Chevron did not own the vessel.

Maintenance and cure claims stem from an employment relationship and can only be asserted against a Jones Act employer or *in rem* against a vessel.  *See Armstrong v. Trico Marine, Inc.*, 923 F.2d 55, 58 n.2 (5th Cir. 1991) ("The law is clear that only the Jones Act employer/shipowner owes an insured seaman maintenance and cure benefits."); *Bakier v. Raymond Int'l, Inc.*, 656 F.2d 173, 185 (5th Cir. 1981).  Chevron asks the court to dismiss this claim because it was not Thomas's Jones Act employer.

OSV submitted an affidavit stating that it was Thomas's only Jones Act employer.  (Docket Entry No. 17, Ex. A, Engeron Affidavit).  Thomas alleged that both ECO and Chevron were his employer, but did not introduce or point to evidence showing that he was Chevron's employee or borrowed seaman.  (Original Petition at ¶ 6).  The undisputed evidence shows that OSV, not Chevron, was Thomas's Jones Act employer.  Thomas's maintenance and cure claim against Chevron is dismissed.

In his supplemental memorandum submitted after the court converted Chevron's motion to dismiss into one for summary judgment, Thomas objected to the court's apparent decision to rule

on Chevron's motion to dismiss and again asked, "subject to and without waiving his motion for remand," that the court permit him to amend his pleadings to "[r]emove Jones Act claims against Chevron and replace those with general maritime law and negligence claims," and to "[r]emove reference to Chevron as Thomas's employer." (Docket Entry No. 48 at p. 3). Thomas stated that his intent in seeking leave to amend was to "conform his pleadings to Chevron and ECO's respective positions on employer status" and "allow Thomas to move forward with substantive discovery at trial." (*Id.*). But even as amended to remove the Jones Act claims, Thomas's claims against Chevron fail as a matter of law. Thomas has not asserted any basis for finding Chevron liable under general maritime law. The undisputed evidence shows that OSV owned the vessel and employed Thomas.

Thomas's motion to amend pleadings is denied because the proposed amendment would be futile.

## VI.   Conclusion

OSV's motion to dismiss for lack of personal jurisdiction is granted. (Docket Entry No. 12). Thomas's motion to remand is denied. (Docket Entry No. 12). Chevron's motion to dismiss, which the court converted into a motion for summary judgment, is granted. (Docket Entry No. 1). A dismissal order is separately entered.

SIGNED on July 29, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

25